That the Christian names of Birch & Small are not mentioned, either in the writ of capias, or of attachment, nor in the affidavit. 3. That it must appear on the papers that the plaintiffs were citizens of the United States. The act was made for a certain class of people, for citizens of the United States only. If an insolvent law · applies only to citizens of Maryland, it must be shown that they are citizens.

THE COURT stopped Mr. F. S. Key as to the 1st objection.

Mr. F. S. Key. As to 2d, the omission of the Christian name does not affect the merits. This objection would not prevail on a motion in arrest of judgment. It could only be taken advantage of by a special demurrer.

THE COURT refused to quash the attachment and suffered the plaintiff to amend the capias and attachment. by inserting the Christian names. They did not think it necessary that the plaintiffs should aver themselves to be citizens of the United States.

## Case No. 1,426.

### BIRCH v. GITTINGS.

[2 Cranch, C. C. 66.][1]

Circuit Court, District of Columbia. Dec. Term, 1812.

#### REPLEVIN—PRACTICE.

If A. replevies from B., who had replevied from A., the court will quash the 2d replevin, and. upon a motion made for a return of the property in the first replevin, will order it to remain with the person who appears to have the right of possession, according to the Maryland law of 1785, c. 80, § 14.

Birch replevied from Gittings, and Gittings from Birch.

THE COURT quashed the 2d replevin and ordered the possession to remain with Gittings, he having the right of possession when Birch replevied. See Maryland Law 1785, c. 80, § 14.

## Case No. 1,427.

### BIRCH v. SIMMS.

[1 Cranch, C. C. 550.][1]

Circuit Court, District of Columbia. July Term, 1809.

#### SLANDER—PLEADING AND PROOF.

In slander, evidence of words spoken in the second person will not support an averment of words spoken in the third person.

Slander. The declaration was "he stole." The evidence was "you stole."

THE COURT, upon the authority of Rutherford v. Moore, in Washington county, at December term, 1806, [Case No. 12,173,] and the case of Willis v. M'Kenzie, in this county, July, 1808, [Id. 17,771,] refused to suffer the evidence to go to the jury. Nonsuit.

[1] [Reported by Hon. William Cranch, Chief Judge.]

BIRCH, (UNITED STATES v.) See Cases Nos. 14,595 and 14,596.

BIRCHARD v. The GEORGE PRESCOTT. See Case No. 5,339.

## Case No. 1,428.

### In re BIRD.

[2 Sawy. 33;[1] 4 Am. Law T. Rep. U. S. Cts. 116; 14 Int. Rev. Rec. 13.]

District Court, D. Oregon. May 24, 1871.

ARMY AND NAVY — SENTENCE OF COURT-MARTIAL —EFFECT OF, WHEN REVERSED — TRIAL OF SOLDIER—WHEN MAY TAKE PLACE — DISCHARGE OF SOLDIER—EFFECT OF.

1. Where, by the sentence of a court-martial, a soldier is discharged from the service before the expiration of his term of enlistment, and such sentence is afterward set aside as null and void, the status of such soldier is not affected in any way by such sentence, and he is deemed to have been in the service all the time between the sentence and the order setting it aside.

2. Under article of war 88, it appears that a soldier may be arrested and tried after the expiration of his term of service for a military offense committed during such term of service, so that the order for the court-martial is issued within two years from the commission of such offense.

3. In any view of the matter, a soldier may be held for trial after the term of his enlistment, by military authority, if arrested for the offense before the expiration of his term of service.

[Cited in Barrett v. Hopkins, 7 Fed. 316.]

4. The petitioner, while in fact discharged from the army, but before the expiration of his term of enlistment, having committed a homicide, might be arrested and held for trial therefor by the military authority—the discharge being afterward set aside as null and void, and the petitioner being at the time a soldier de jure.

At law. The petition for the writ [of habeas corpus] was filed May 8, 1871, and on the same day an order was made allowing the writ, as prayed for, returnable before the judge at chambers on May 11. In the petition it is alleged that petitioner [William B. Bird] is confined in Multnomah county jail, by one James H. Lappeus, chief of police of the city of Portland, for the purpose of aiding the officers of the military department of the Columbia to transport petitioner to Alaska, upon the pretence that a crime has been committed by the petitioner against the rules and regulations of the army of the United States; and that the imprisonment of petitioner is illegal in this: that petitioner is a citizen of the United States, and not amenable to said rules and regulations.

On May 11, respondent Lappeus produced the body of the petitioner, as commanded by the writ, and filed a return thereto, stating that the petitioner was placed in his custody on May 7, 1871, by one Lieutenant Dennison of the army of the United States, and the cause of his imprisonment, as he was informed.

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]